UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMEREN MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV02051AGF |
| | ) | |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Union Electric Company d/b/a Ameren Missouri ("Ameren") brings this

action against Defendant, the United States Environmental Protection Agency ("EPA")

seeking disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552 *et seq.* ("FOIA")

of records pertaining to certain Notices of Violation issued to Plaintiff (collectively, the

"NOVs"). The NOVs alert Plaintiff to the failure to obtain permits under and possible

violations of the Clean Air Act ("CAA"), 42 U.S.C. §§7470-92, related to "significant net

emissions increases," within the meaning of the CAA, resulting from certain physical

changes and changes in methods of operation ("the Projects") undertaken by Plaintiff at the

power plants it operates.[1] Defendant has produced certain agency records responsive to

---

[1] An owner or operator of a major stationary source of air pollution may be
required to obtain a construction permit if it undertakes a change that constitutes a "major
modification." (Doc. No. 21 at 5.) The determination of whether a change constitutes a
"major modification" involves an assessment of whether the operator expects or projects
the change to cause a net increase in the emissions of a regulated pollutant above a
specified level. *See, e.g.*, 42 U.S.C. § 7475(a)(1); 40 C.F.R. § 52.21(a)(2), (b)(2),
(b)(23).

Plaintiff's FOIA request, but asserts that other responsive records are exempt from disclosure under 5 U.S.C. §552(b)(5) ("Exemption 5") and § 552(b)(7)(A) ("Exemption 7(A)") of the FOIA.

On January 12, 2011, the United States Department of Justice ("DOJ"), acting on behalf of Defendant, filed a lawsuit, *United States v. Ameren Missouri*, Case No. 4:11-CV-0077-RWS, against Plaintiff in the United States District Court for the Eastern District of Missouri. In that case, pending before the Honorable Rodney W. Sippel, DOJ seeks injunctive relief and civil penalties for violations of the CAA and alleges that Plaintiff violated the CAA and other applicable laws when it undertook major modifications at its Rush Island Plant in Festus, Missouri ("CAA Case").[2] On February 15, 2012, Judge Sippel denied a motion to consolidate the CAA Case and the instant case because the dispute in this case is broader than that in the CAA Case, dealing, as it does, with records related to 28 Projects at four power plants rather than alleged CAA violations arising from modifications at a single power plant.

Now before the Court are the parties' cross motions for summary judgment. (Doc. Nos. 20 & 32.) Plaintiff seeks an order directing Defendant to release all documents responsive to its request and an award of attorney's fees and costs. In its cross motion, Defendant seeks a determination that it has complied with its obligation under the FOIA because the records withheld are exempt from disclosure under Exemptions 5 and 7(A). In

---

[2]    On May 27, 2011, Defendant issued an amended NOV, and on June 28, 2011, DOJ filed an amended complaint in *United States v. Ameren Missouri*, Case No. 4:11-CV-0077-RWS, alleging additional violations regarding the Rush Island Plant.

the alternative, Defendant seeks an order staying this case until the close of discovery in the pending CAA Case. The parties have fully briefed the issues and, at Plaintiff's request, the Court held oral argument on these motions.

**Background**

On the record before it the Court finds the following undisputed facts:

Ameren operates four coal-fired electric generating power plants located in Missouri, known as the Labadie, Meramec, Rush Island and Sioux plants ("the Plants"). On January 26, 2010, October 14, 2010, and May 27, 2011, Defendant issued NOVs to Plaintiff pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1). (Doc. Nos. 24-3-24-5.) In the NOVs, Defendant found, in part, that Plaintiff undertook forty-eight Projects at its Plants between 1985 and 2010 that caused "significant net emissions increases" in S02, NOx, PM, ozone, and/or PM2.5. The NOVs further stated that Plaintiff failed to apply for or obtain a permit from Defendant prior to commencing the Projects and that the Projects resulted in ongoing violations of certain provisions of the CAA. 42 U.S.C. §§ 7470-92.

The NOVs are not final agency actions[3] and do not specify particular emissions levels or the calculations, methods, or data that Defendant used to make its administrative findings that the Projects resulted in significant emissions increases.

---

[3] NOVs are not final agency actions. *Union Electric Co. v. EPA*, 593 F.2d 299 (8th Cir. 1979). "[N]o legal consequences flow from the issuance of the NOV because it merely notifies plaintiffs of their existing obligations under the CAA." *Royster-Clark Agribusiness, Inc. v. Johnson*, 391 F. Supp. 2d 21,28 (D.D.C. 2005).

On July 1, 2011, Plaintiff submitted a FOIA Request[4] (the "Request") seeking "all documents and information that discuss or memorialize the emission calculations performed or used in connection with . . . the NOVs." (Doc. No. 24-6.) Plaintiff asserts that the Request sought only factual data and information that supported the allegations made in the NOVs and explicitly excluded the work product or mental impressions of Defendant's counsel. By letter dated July 28, 2011, Defendant denied the initial request, confirming only that it possessed responsive information in "approximately 100 spreadsheets and 45 other documents," exempt from mandatory disclosure under Exemptions 5 and 7(A) of FOIA ("the First Response"),[5] 5 U.S.C. § 552(b)(5), (b)(7)(A). (Doc. No. 24-7.) Defendant did not

---

[4]    Plaintiff requested that Defendant produce: "[A]ll documents and information that discuss or memorialize the emission calculations performed or used in connection with [Defendant's] findings that the physical changes or changes in the method of operation identified in the NOVs constituted major modifications that caused a significant emissions increase and a significant net emissions increase of sulfur dioxide, nitrogen oxide, particulate matter, particulate matter less than 2.5 micrometers in diameter and/or ozone." (Doc. No. 24-6 at 1.)

[5]    The full text of EPA's First Response read:

The documents you requested clearly meet both exemptions 5 and 7(A). Exemption 5 applies because these documents are attorney-client privileged communications. Furthermore, they are also documents that were prepared at the time at the direction of EPA and DOJ attorneys in anticipation of litigation and are therefore attorney work-product. Exemption 7(A) applies because these records were compiled for the enforcement purposes of investigating the compliance status of a facility with the New Source Review requirements of the Clean Air Act. The documents you request contain confidential information, the release of which will prematurely reveal evidence or strategy in an ongoing case. Therefore, the production of these documents could reasonably be expected to interfere with ongoing enforcement proceedings.

(Doc. No. 24-7.)

provide a *Vaughn* index[6] or specific description of any of the documents.  On August 16,

2011, Plaintiff filed a timely administrative appeal from the First Response.  Defendant

responded by letter dated September 16, 2011, granting the request "with respect to the

requested records and portions of records that contain only factual information not subject

to exemption under FOIA" and  "with regard to some portions of the records because there

are reasonably segregable, non-exempt portions of the  records requested."  (Doc. No. 24-9

at 1.)

Defendant denied the request "with respect to the remaining records and information,"

claiming  Exemptions  5  and  7(A)  of  FOIA  authorized  Defendant  to  withhold  certain

documents and information responsive to Plaintiff's Request.

Defendant informed Plaintiff that 275 documents were responsive to the Request and

agreed to provide all  "reasonably  segregable  and  non-exempt  records."   On October 19,

2011, Defendant produced[7] 48  entire  documents  (the "Disclosed  Documents")  and  136

---

6    *Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir.1973), *cert. denied*, 415 U.S. 977 (1974).

> A *Vaughn* index provides a specific factual description of each document sought by the FOIA requester.  Specifically, such an index includes a general description of each document's contents, including information about the document's creation, such as date, time, and place.  For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question is provided.

*In re DOJ*, 999 F.2d 1302, 1306 (8th Cir. 1993) (quotation omitted).

7    Plaintiff initially asserted that Defendant failed to repond to the request within twenty working days as required under the FOIA and applicable regulations.  40 C.R.F. § 2.104(K), (1).  In its motion for summary judgment, Plaintiff apparently abandoned this argument.  (Doc. No. 24 ¶¶ 14-21.)

redacted documents (the "Redacted Documents") and withheld 91 documents (the "Undisclosed Documents").[8]

The Disclosed Documents include: spreadsheets with "pure data," involving no analyses, projections or exercise of judgment by EPA enforcement staff, and related to parameters such as "Gross Load, Heat Input, and NOx rate"; graphical depictions of these pure data, and spreadsheets containing information obtained from Ameren in response to EPA information requests. (Declaration of Mark Smith, Doc. No. 34-8, ¶ 30.) Defendant asserts that it used the information in the Disclosed Documents to make its calculations regarding Plaintiff's CAA compliance, and agreed to their full disclosure because they contain information generally available to the public. *See id.*

Defendant asserts that the "Redacted Documents" contained EPA's analyses of Plaintiff's emissions trends for SO2, NOx, and Plant heat input over time (52 documents); EPA's analyses of data reported to the Generating Availability Data System (GADS) (12 documents); and EPA's projections and estimations, based upon EPA engineering enforcement staff's judgment, of the projected emissions increases resulting from the Projects referenced in the NOVs (72 documents). *Id.* ¶ 32.

Citing FOIA Exemptions 5 and 7(A), the privileged nature of the documents, and the pending enforcement proceeding in the CAA case pending before Judge Sippel as grounds for these exemptions, Defendant withheld the remaining documents. (Doc. No. 24-10.) The

---

[8] There are discrepancies in the record regarding the number of documents in each category, but at the hearing the parties agreed that there are 78 documents or files in dispute, all of similar nature.

"Withheld Documents" "generally include memoranda and other documents written by EPA enforcement staff at the direction of EPA and/or DOJ attorneys. These documents were prepared to support the issuance of the NOV and to refer the case to DOJ, and therefore were prepared in anticipation of litigation. They include EPA staff's analysis [sic] of Ameren's compliance with the CAA for the Projects noted in the . . . NOVs." (Doc. No. 34-8,¶ 33.) The withheld documents were created by environmental scientists and engineers of the EPA enforcement staff under the direction and supervision of counsel. They were then shared with EPA Regional Counsel and/or DOJ prior to the issuance of the NOVs and the filing of the Complaint in the CAA case. *See id.*

On October 31, 2011, Plaintiff requested an itemized index of the withheld documents and the exemptions claimed for each. (Doc. No. 24-11.) Defendant denied this request. (Doc. No. 24-12.) Plaintiff then filed this action under FOIA as an appeal from the final agency action asserting that Defendant failed to meet its burden of establishing the applicability of the FOIA exemption to these documents.

## Applicable Law

### The FOIA

"Congress intended FOIA to permit access to official information long shielded unnecessarily from public view." *Milner v. Dept. of Navy*, 131 S.Ct. 1259, 1262 (2011) (quotation omitted). "FOIA thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions. These exemptions are explicitly made exclusive and must be narrowly construed." *Hulstein v. Drug Enforcement Admin.*, 671 F.3d 690, 694 (8th Cir. 2012) (quotations omitted).

FOIA is designed, however, to benefit the public, not specific litigants. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975) (recognizing that a requester's "rights under the Act are neither increased nor decreased by reason of the fact that [he or she] claims an interest in the [requested records] greater than that shared by the average members of the public"); *see also NLRB v. Robbins Tire & Rubber Company*, 437 U.S. 214, 242 (1978) (noting that the "FOIA was not intended to function as a private discovery tool").

### **Summary Judgment under the FOIA**

The FOIA provides for *de novo* review by a district court of an agency decision to withhold requested information, and places the burden on the agency to demonstrate that a claimed exemption applies. 5 U.S.C. § 552(a)(4)(B). "[S]ummary judgment is available to a defendant agency where 'the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Missouri Coalition for Env't Found. v. U.S. Army Corps of Eng'rs,* 542 F.3d 1204, 1209 (8th Cir. 2008) (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)). The district court must evaluate the record, including pleadings, affidavits, or declarations on file, in the light most favorable to the nonmoving party to determine whether "there is no genuine dispute as to any material fact and the movant party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Missouri Coalition,* 542 F.3d at 1209. Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *Gannon Intern., Ltd.*

*v. Blocker,* 684 F.3d 785, 792 (8th Cir. 2012) (holding that unrebutted evidence "can (and should)" form the basis for summary judgment).

In considering a motion for summary judgment under the FOIA:

> [a] court's primary role . . . is to review the adequacy of the affidavits and other evidence presented by the Government in support of its position . . . . If the Government fairly describes the content of the material withheld and adequately states its ground for non-disclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position. The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

*Barney v. IRS*, 618 F.2d 1268, 1272 (8th Cir. 1980) (quotation omitted).

"Boilerplate affidavits," without more, are insufficient to show that no genuine issue of fact exists, but a court may rely on affidavits "giving reasonably detailed explanations why any withheld documents fall within an exemption." *ACLU v. DOJ,* 681 F.3d 61, 69 (2d Cir. 2012); *see also Wilner v. NSA,* 592 F.3d 60, 73 (2d Cir. 2009) (holding that affidavits are sufficient if they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith").

**Exemption 5**

FOIA Exemption 5[9] protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 is designed to assure that agencies do not have to "operate in a fishbowl" and to "allow full and frank discussion while preserving the goal of an open government." *Missouri Coalition,* 542 F.3d at 1209 (quotation omitted). To qualify for this exemption, a document "must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Civil discovery privileges such as the attorney-work product, attorney-client privilege, and the "deliberative process" privilege are incorporated in Exemption 5. *Id.; see also Nat'l Day Laborer Org. Network v. U.S. Immigration and Customs Enforcement Agency*, 811 F. Supp. 2d 713,735 (S.D.N.Y. 2011). Exemption 5 is applied narrowly and reaches "only those documents normally privileged in the civil discovery context.'" *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 n.16 (1964) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 149). To qualify, a document must thus satisfy two conditions: "its source must be

---

[9]     Defendant does not assert that the other privilege engrafted to Exemption 5, the deliberative process privilege, applies here. "Work product protects mental processes of the attorney, while the deliberative process privilege covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. at 8 (quotations omitted). In order to fall within the deliberative process exemption, a document must be both predecisional and deliberative. *State of Missouri ex rel. Shorr v. U.S. Army Corps of Eng'rs*, 147 F.3d 708, 710 (8th Cir. 1998).

a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath Water Users Protective Ass'n*, 532 U.S. at 8.

To establish attorney-client privilege in the context of Exemption 5, an agency must show that the document withheld (1) involves "confidential communications between an attorney and his [or her] client" and (2) relates to a "legal matter for which the client has sought professional advice." *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). The agency also must demonstrate that the information was intended to be confidential and was not disclosed to a third party. *Id.* at 253.

 To establish work-product privilege in the context of Exemption 5, an agency must show that the requested information constitutes "mental impressions, conclusions, opinions, or legal theories of an attorney . . . concerning the litigation" ordinarily protected by the attorney work-product privilege. Fed. R. Civ. P. 26(b)(3)(B). "Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency." *Weber Aircraft Corp.*, 465 U.S. at 799-800.

### Exemption 7(A)

Under Exemption 7(A) an agency may withhold from disclosure information compiled for "law enforcement purposes, but only to the extent that the production . . . could reasonably be expected to interfere with enforcement proceedings." *Shannahan v. IRS*, 672 F.3d 1142, 1145-46 (9th Cir. 2012). Two questions commonly arise in the application of Exemption 7(A). The first is whether the requested information was "compiled for law enforcement purposes." *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153 (1989) ("Before it

may invoke [Exemption 7], the Government has the burden of proving the existence of ... a compilation for such a purpose."); *see also Milner v. Dep't of Navy,* 131 S. Ct. at 1272 (Alito, J., concurring). The Supreme Court has given a broad interpretation to the use of the term "compiled" under Exemption 7(A), holding that information need not have been originally "compiled for law enforcement purposes" to satisfy Exemption 7's threshold requirement. Rather, "even though . . . documents were put together at an earlier time for a different purpose," they may fall within Exemption 7 if they are later assembled for law enforcement purposes. *John Doe Agency*, 493 U.S. at 154-55; *see also Milner,* 131 S. Ct. at 1273 (Alito, J., concurring).

The second question is whether disclosure of the documents "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Pending administrative and civil actions under the CAA for penalties and injunctive relief such as those at issue here are deemed "enforcement proceedings" within the ambit of Exemption 7(A). *See Barney*, 618 F.2d at 1273 n.10 (applying Exemption 7 to protect disclosure of documents that may be used later in civil or criminal IRS proceedings); *General Elec. Co. v. EPA*, 18 F. Supp. 2d 138, 143 (D. Mass. 1998) (noting it is well established that Exemption 7 applies to civil and regulatory proceedings).

With respect to the question of interference,[10] in *Robbins Tire & Rubber Company*, the Supreme Court explained that Exemption 7 was designed to protect the legitimate needs of law enforcement agencies to keep certain records confidential and to conduct investigations and pursue enforcement without undue hindrance. 437 U.S. at 223-24. ("One of the primary purposes of Exemption 7 was to prevent harm to the Government's case in court by not allowing litigants earlier or greater access to agency investigatory files than they would otherwise have."). In light of the important interests protected by Exemption 7(A), an agency is entitled to summary judgment if it can make a showing that: "(1) a law enforcement proceeding is pending or prospective, and (2) release of the requested information could generally be expected to cause some articulable harm." *Barney,* 618 F.2d at 1272-73. "Articulable harm" is demonstrated if disclosure would give the requester "advance access to the government's case," or allow a "suspected violator" to "construct defenses which would permit violations to go unremedied." *Robbins Tire & Rubber Company,* 437 U.S. at 236-37, 240-241 (quotations omitted); *see also Shannahan*, 672 F.3d at 1149. Exemption 7(A) implicates obstruction of justice concerns like witness tampering, but the legal test is "broader and less stringent than such examples suggest." *Barney*, 618 F.2d at 1273. "Articulable harms" include the possibility of witness intimidation, destruction of evidence, or the creation of false alibis. *Goodrich Corp. v. EPA*, 593 F. Supp. 2d 184, 193-94 (D.D.C.

---

[10]     Under exemption 7(A) the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding. *Robbins Tire & Rubber Co.,* 437 U.S. at 234-35. Courts may make generic determinations that, "with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" *Id.* at 236.

2009). However, courts also recognize that examples of "interference" include "prematurely revealing the Government's case" before formal discovery in law enforcement proceedings or revealing the direction, scope, and limits of the investigation. *Barney*, 618 F.2d at 1273; *see also Kanter v. IRS*, 433 F. Supp. 812, 818 (N.D. Ill. 1977).

## Analysis

### Sufficiency of the Declaration

Defendant offers the Declaration of Mark Smith, the EPA Region 7 Air Permitting and Compliance Branch Chief, in support of its motion for summary judgment. The sworn declarations from Smith provide adequate additional information to explain why the documents should be exempt. *See Miller*, 779 F.2d at 1387 (holding that an agency carries its burden of proof by providing affidavits to explain why documents are subject to an exemption)*; Gannon Intern., Ltd.,* 684 F.3d at 792 (holding "[s]imply dismissing unrebutted evidence as 'self-serving' is precisely the sort of 'metaphysical doubt' that will not suffice to oppose summary judgment.") (citation omitted).

Plaintiff has offered no evidence of agency bad faith with respect to Defendant's overall response to the FOIA request or the contents of the declaration. In the absence of a "reason to question the good faith of the agency," the Court is entitled to accept the credibility of the declaration and will do so here. *Barney*, 618 F.2d at 1272. In addition, the Court finds that the declaration is sufficient because it contains reasonably detailed explanations and logical bases for the application of the claimed exemptions. *Id.* at 1272-73*; see also Wilner v. NSA,* 592 F.3d at 73. Further, there appears to be no dispute as to the nature of the documents and information withheld, and Defendant's asserted basis therefor. Essentially,

the withheld documents reflect Defendant's application and analysis of formulas applied by the EPA to data reported by Plaintiff, the results of which are used to assess whether to issue an NOV or take other enforcement action. Disclosure of the document and spreadsheets would necessarily disclose the formulas and analysis used.

### Application of the Exemptions

Upon review of the record, the Court concludes that Plaintiff has not succeeded in demonstrating a genuine issue of material fact that would preclude the application of either Exemption 5 or Exemption 7(A) in this case. In addition, Defendant has established the predicates for the application of Exemptions 5 and 7(A) to all of the documents at issue.

### Exemption 5/ Attorney-Client Privilege

With respect to the attorney-client privilege prong of Exemption 5, Defendant has shown that the Redacted and Withheld Documents contain confidential communications between attorney and client related to a "legal matter for which the client has sought professional advice." *Mead Data Central, Inc.*, 566 F.2d at 252. The record further establishes that these records were "intended to be confidential and were not disclosed to a third party." *Id.* at 253.

By way of the Smith Declaration, Defendant has established that preliminary, "screening level" emissions analyses, were conducted at the direction of EPA or the DOJ attorneys in anticipation of enforcement proceedings or litigation. (Doc. No. 34-8, ¶¶ 48, 50.) Smith's declaration also indicates that information and data corresponding to the Disclosed Documents were analyzed pursuant to EPA methodologies at the direction of counsel, assessed in conjunction with counsel, and ultimately used to support Defendant's decision

made in consultation with counsel, to refer Plaintiff to DOJ for potential enforcement action under the CAA. *Id.* ¶ 47. Apart from consultation with DOJ counsel representing Defendant, the Withheld Documents have not been disclosed to anyone outside of the EPA. *Id.* ¶¶ 48, 52. Defendant also has established that the Redacted and Withheld Documents consist of the aforementioned preliminary screening-level emissions analyses prepared by EPA staff with the assistance of counsel to determine whether Plaintiff should have expected emissions to increase as a result of undertaking one or more projects at each emissions-producing unit. *Id.* ¶ 47.

### Exemption 5/ Work Product Privilege

In addition, Defendant has established that the information Plaintiff seeks is subject to the attorney work-product privilege[11] under Exemption 5 because Defendant's assessment of CAA compliance for each Project is a highly fact-specific inquiry that involves legal and technical judgments, an understanding of the statutory and regulatory provisions at issue, and an application of those regulations to the facts. *Id.* The Redacted and Withheld Documents constitute internal analyses of emissions data carried out by EPA scientists and engineers acting under the supervision of, or in consultation with, EPA and DOJ attorneys, and were compiled in reasonable anticipation of litigation and possible enforcement actions. *Id.* ¶¶ 45-48. As noted above, apart from consultation with DOJ counsel representing Defendant, the

---

[11]    As noted above, Defendant does not assert that the other privilege engrafted to Exemption 5, the deliberative process privilege, applies here. Nonetheless, the Court's review of the record persuades it that this verison of Exemption 5 also may be applicable as the Smith Declaration supports a conclusion that the disputed documents are predecisional and deliberative. *See*, (*Id.* ¶¶ 38, 40, 47; *see also MSD v. EPA*, No. 4:10–CV–2103 (CEJ), 2012 WL 685334, at*7 (E.D. Mo. Mar. 2, 2012 ).

withheld and redacted documents have not been disclosed to anyone outside of the EPA. *Id.* ¶¶ 48, 52. Defendant has further established that disclosure of the Redacted and Withheld Documents would reveal Defendant's enforcement practices and strategies, which could in turn allow Plaintiff other regulated entities to avoid detection and interfere with enforcement by providing Plaintiff with advance notice of Defendant's analytical approach and the weight to be accorded various factors. *Id.* ¶¶ 43, 44.

Plaintiff asserts that the records at issue involve data and calculations or are spreadsheets ("Numerical Information") used by Defendant in its civil and administrative actions under the CAA, and that the Numerical Information is "purely factual" and may not therefore, be shielded from disclosure under the attorney client or work product privileges. Plaintiff's characterization of the Numerical Information as "purely factual" fails to take into account that the seemingly straightforward numeric results of Defendant's assessments of Plaintiff's compliance with the CAA are not "purely factual," but rather derive from raw data (that has been disclosed to Plaintiff) selected and analyzed pursuant to its own formulas by Defendant's technical staff, scientists, and engineers, working in conjunction with or at the direction of attorneys. *Id.* ¶¶ 38, 46-47, 52. Therefore, the Numerical Information, albeit numeric, constitutes "mental impressions, conclusions, opinions, or legal theories" so as to satisfy the requirements of the work product privilege. *See, e.g.*, *Missouri Coalition,* 542 F.3d at 1211 (holding that "purely factual material" may be withheld from disclosure under Exemption 5 if that material would expose the deliberative process of an agency) (quotation omitted); *MSD*, 2012 WL 685334, at *7 (holding that "[a] document does not become nondeliberative if facts are included in the deliberations").

Moreover, the record indicates that agency attorneys, on the basis of their understanding of the applicable law, direct staff to consider various factors and apply certain variables to assist in refining their analyses, and these analyses form the basis for the issuance of NOVs and inform EPA and DOJ's decision about whether to file a civil judicial complaint. *Id.* ¶¶ 46-47. Thus, the Redacted and Withheld Documents satisfy the requirement of the work product privilege that they be created in reasonable anticipation of litigation.

**Exemption 7(A)**

Upon further review of the record the Court concludes that Defendant also has established that the Redacted and Withheld Documents are exempt from disclosure under Exemption 7(A). Defendant's declaration adequately demonstrates that the information was "compiled" for law enforcement purposes and that its disclosure will result in "articulable harm" to Defendant's enforcement activities.

It is undisputed that Defendant performs a law enforcement function as a result of its statutory responsibility for "permitting, enforcement, and compliance activities under the Clean Air Act," and that such activity applies to the Plaintiff's power plants. *Id.* ¶ 2. The information Plaintiff requests, "all documents and information that discuss or memorialize" Defendant's emissions calculations performed in conjunction with Defendant's findings of violations identified in the NOVs, was, pursuant to Plaintiff's own description, compiled as part of Defendant's investigation of Plaintiff's possible violations of the CAA. (Doc. No. 24-6 at 1.) Therefore, the record establishes that this information was compiled for law enforcement purposes.

The record further establishes that disclosure of this information would result in an articulable harm and could reasonably be expected to interfere with law enforcement proceedings, the CAA Case, as well an any enforcement action Defendant may undertake in relation to the NOVs. Defendant also asserts that disclosure of the emissions and accompanying legal conclusion to a party under current investigation and ongoing litigation would contravene the very purpose of Exemption 7(A) to protect the government from advance disclosure of its enforcement and litigation strategies.

Plaintiff objects to the notion that Defendant may protect information relating to its enforcement strategies and the direction, scope, and limits of its investigations as contrary to Defendant's obligation to encourage compliance with environmental laws and regulations. This argument ignores another of Defendant's obligations – the enforcement of those laws and regulations. Disclosure of enforcement strategies and the direction, scope, and limits of investigations interferes with this law enforcement activity by permitting Plaintiff and other regulated entities to violate the CAA, but evade detection. *See id.* ¶¶ 43-44. It is not for Plaintiff to decide the best method for Defendant to fulfill its enforcement obligations.

Plaintiff also contends that as a litigant in the CAA Case and the possible target of enforcement action arising from the NOVs, it has a right to the disclosure of the Redacted and Withheld Documents in order adequately to defend itself. Defendant asserts that the Redacted and Withheld Documents are not the evidence that Defendant or DOJ would present in an enforcement case to "support its prima facie case or rebut an affirmative defense." *Id.* ¶ 52. Whether or not this is so, Plaintiff has not cited and the Court has not identified any authority entitling the subject of a civil enforcement action to use the FOIA to obtain advance

notice of the evidence against it.  As noted above, the very purpose of Exemption 7(A) is to protect against such disclosures.  Moreover, the FOIA is not intended as a substitute for civil discovery and the Court's determination here in no way affects Plaintiff's ability to employ civil discovery tools in any proceeding against it.

**Segregability**

The  FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)."  An entire document may not be  withheld simply because some of the material in the document is subject to an exemption.  *Missouri Coalition*, 542 F.3d at 1212.  Non-exempt portions of documents must be disclosed unless they are "inextricably intertwined" with exempt portions.  *Id.*  Defendant is required to demonstrate that the exempt portions of the documents are not segregable from the non-exempt material.  *Id.*  And, in every case, the district court must make an express finding on the issue of segregability.  *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007); *Rugiero v. DOJ*, 257 F.3d 534, 553 (6th Cir. 2001); *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979).

The record indicates that 184 of 275 documents were disclosed in whole or in part. With respect to the 136 Redacted Documents, Defendant has provided specific, detailed designations indicating the types of information redacted.  (Doc. No. 34-8, ¶ 32.)  With respect to the Withheld Documents, Defendant's sworn statement indicates that "factual information . . .  was determined to be inextricably intertwined with privileged information and . . .  could not be reasonably segregated to be released under FOIA from the attorney-

work product, attorney-client and law enforcement information." *Id.* ¶ 34.  On the basis of this record, the Court finds that Defendant has satisfied its obligation to disclose all reasonably segregable information in the records responsive to Plaintiff's Request.

**Vaughn Index and *In Camera* Review**

Plaintiff has requested that the Court review a representative sample of documents *in camera* and order Defendant to provide a "*Vaughn* index" for the Redacted and Withheld Documents.  The Court will not require either of these measures.  *In camera* review is not required where the Court is satisfied that the agency has adequately supported their exemption claims.  *See Rugiero*, 257 F.3d at 544.  In addition, under Eighth Circuit law, no *Vaughn* index may be required where Exemption 7, the law enforcement exemption, forms a basis for withholding documents.  *In re DOJ*, 999 F.2d at 1311 (error to require agency to provide *Vaughn* index detailing documents withheld when the basis for exemption was law enforcement purposes); *see also Barney*, 618 F.2d at 1273-74 (holding that no *Vaughn* index would be required since the record clearly demonstrated that the FOIA requestor was subject to an ongoing law enforcement investigation).

**Attorney's Fees**

The Court turns to Plaintiff's request for attorney's fees.  A FOIA claimant who has "substantially prevailed" on its claim may recover attorney's fees.  5 U.S.C. § 552(a)(4)(E); *Miller*, 779 F.2d at 1389.  A favorable judgment is not required for such an award, but absent such a judgment, a plaintiff must show: "(1) that prosecution of the action could reasonably be regarded as necessary to obtain the information; and (2) that the existence of the lawsuit had a causative effect on the release of the information." *Id*.  The Court, having found that

Defendant's assertion of Exemptions 5 and 7(A) is proper and that no further disclosure of information is required, also finds that Plaintiff cannot demonstrate either of these elements, and concludes that an award of attorney's fees is not appropriate here.

<u>Conclusion</u>

In conclusion, based upon its review of record, the Court finds that the Defendant agency has fully discharged its duties under FOIA and is entitled to summary judgment on Plaintiff's claims.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is **DENIED**. (Doc. No. 20.)

**IT IS FURTHER ORDERED** that Defendant's Motion for summary judgment is **GRANTED**. (Doc. No. 32.)

**IT IS FURTHER ORDERED** that Plaintiff's request for attorney's fees is **DENIED.**

A separate judgment will accompany this Memorandum and Order.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 25th day of September, 2012.